

# COPY



## HUBBARD COUNTY DISTRICT COURT
## STATE OF MINNESOTA

---

| | |
|---|---|
| John Larson, Dr. James F. "Fred" Lundstrom, Orville Kraus, John Maczko, Ed Herrmann, Lynn Swaggert | **Case No.**_____ |
|        Plaintiffs, | |
| vs. | **SUMMONS** |
| County of Hubbard, Floyd Frank, individually, Levoine F. "Swede" Nelson, individually, and Lyle Robinson, individually | **(Jury Trial Demanded)** |
|      Defendants. | |

_Commissioner_ (handwritten above "of Hubbard")

---

**THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANT:**

**YOU ARE HEREBY SUMMONED** and required to appear and defend against the Complaint in this action, which is herewith served upon you, by serving upon the undersigned an Answer or other proper response within twenty (20) days after the service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Dated: February 17, 2006.



RECEIVED
MAR - 3 2006



EXHIBIT
4

Associate Counsel
Timothy P. Hill (#188451)
Hill Law Office
P.O. Box 9043
Fargo, ND  58108-6017
(701)293-7612

Jay D. Carlson (#14990)
15 Broadway, Suite 500
Alerus Financial Building
PO Box 448
Fargo, ND 58107
(701) 232-3953
**ATTORNEYS FOR PLAINTIFFS**

STATE OF MINNESOTA

COUNTY OF HUBBARD

DISTRICT COURT

NINTH JUDICIAL DISTRICT

---

John Larson, Dr. James F. "Fred"
Lundstrom, Orville Kraus, John Maczko,
Ed Herrmann, and Lynn Swaggert

           Plaintiffs,

vs.

County of Hubbard, Floyd Frank,
individually, Levoine F. "Swede"
Nelson, individually, and Lyle Robinson,
individually

           Defendants.

Case No._____
Case Type Negligence



**COMPLAINT**

**Jury Trial Demanded**

---

The Plaintiffs; John Larson, Fred Lundstrom, Orville Kraus, John Maczko, Ed Herrmann, and Lynn Swaggert for their complaint against the Defendants do allege and state as follows:

### PARTIES

1.     John Larson hereinafter Larson is a Minnesota citizen and resident of County of Hubbard. Larson was a primary guarantor for the bond required by Hubbard County.

2.     Dr. James F. "Fred" Lundstrom hereinafter Lundstrom is a resident of the State of North Dakota and a property owner in Hubbard County. Lundstrom was a primary guarantor for the bond required by Hubbard County.

1

3.      That the Plaintiffs, Orville Krause, Ed Hermann, John Maczko, and Lynn Swaggert, were some of the contingent guarantors of the bond required by the County of Hubbard for the petitioners to proceed with the project.

4.      That the Defendant, County of Hubbard is a political subdivision of the State of Minnesota and is the drainage authority for Hubbard County as defined by Minnesota law.

5.      That the Defendant Floyd Frank hereinafter Frank is a resident of the County of Hubbard and at all times relevant was a member of the Hubbard County Commission and served as a member of the Technical Advisory Committee convened by the Hubbard County Soil and Water Conservation District.

6.      That the Defendant Levoine F. Nelson hereinafter Nelson is a resident of the County of Hubbard and at all times relevant was a member of the Hubbard County Commission and served on Technical Advisory Committee convened by the Hubbard County Soil and Water Conservation District.

7.      That the Defendant Lyle Robinson hereinafter Robinson is a resident of the County of Hubbard and at all times relevant was a member of the Hubbard County Commission and served on Technical Advisory Committee convened by the Hubbard County Soil and Water Conservation District.

## FACTS

8.      That Lake Belle Taine is a basin lake for the Mantrap chain of lakes consisting of 28 lakes all located within the County of Hubbard, State of Minnesota.

2

9.     That at some time prior to the construction of the current Minnesota State Aid Highway # 34, Lake Belle Taine had a flood way outlet with a run-out level of approximately 1428 above mean sea level, that allowed flood water to escape to the Crow Wing chain of lakes through a ravine running in a generally Southerly direction.

10.     That the culvert allowing water to pass through County Road # 80 at an elevation of 1423.5 has been blocked and filled. Engineering studies of Minnesota State Aid Highway #34 appear to set the culvert beneath Highway #34 at an elevation of 1426.9.

11.     The obstruction of the culvert through County Road # 80 and landscaping by the private property owner F. F. Reimers has prevented water from flowing in the flood way.

12.     In 2001 Lake Belle Taine reached record high water levels of 1429.9 causing severe property damage and erosion.

13.     Property owners were forced to rip-rap their property, structures were damaged, and thousands of trees were destroyed by the flood water in 1999 and subsequent years.

14.     In June of 1999 the Lake Belle Taine Water Task Force (WTF) was formed and met with representatives from the State of Minnesota Department of Natural Resources, the Minnesota Pollution Control Agency, Hubbard County Environmental Services, and the Hubbard County Soil and Water Conservation District.

15.     In March of 2000 the Hubbard County Commission approved the funding for a United States Army Corps of Engineers Study to determine the most practical and cost effective method for managing the water levels on Lake Belle Taine and upstream lakes on the Mantrap Chain.

16.     On August 11, 2000 a preliminary draft of the Lake Belle Taine Flood Damage

3

Initial Appraisal Planning Report was received by the Hubbard County Soil and Water Conservation District. The recommendation contained in the report was to construct an outlet providing a direct discharge to the Crow Wing Lakes to remove flood water from the Mantrap chain.

17.     On August 31, 2000 Hubbard County Commissioner Floyd Frank, who is also a resident of 3rd Crow Wing Lake on the Crow Wing chain of lakes, recommended a downstream impact study be completed before any further action would be taken by the Hubbard County Commission.  A resolution by Crow Wing Lake associations to that effect was read into the record of the September 6, 2000 meeting of the Hubbard County Board.

18.     On November 15, 2000 the Hubbard County Commission directed the Hubbard County Soil and Water Conservation District to pursue the establishment of a "citizen" Watershed Steering Committee (WSC), that included, but was not limited to, current Hubbard County Commissioners Frank, Nelson, and Robinson to complete further studies concerning the flood water on Lake Belle Taine and the Mantrap Chain.

19.     On June 20, 2001 the Watershed Steering Committee (WSC) recommended to the Hubbard County Board of Commissioners that a Works of Improvement was the most desirable mechanism to address the issue of rising water on the Mantrap chain of lakes. The Watershed Steering Committee (WSC) identified infiltration,  retention of upstream waters, direct discharge to the Crow Wing chain, moving structures and doing nothing as possible alternatives.

20.     On July 5, 2001 and as amended on September 19, 2001, the Hubbard County Board of Commissions adopted a resolution finding that the proposed Work of Improvement was feasible, would be of public benefit, would promote public health, safety, and welfare, and further the purpose and best interest of the Soil and Water Conservation District. The Hubbard

4

County Commission resolution directed the Soil and Water Conservation District to conduct additional studies and prepare a preliminary general plan upon receiving a valid petition for a project and the posting of a bond by project petitioners.

21.     That Bill Alden of the SWCD, citing direction from the Hubbard County Commission, ordered that the WTF pay the engineering firm of Widseth-Smith-Nolting (hereafter WSN) directly, rather than through bonding,  for the cost of the preliminary general plan, resulting in expenses to WTF donors of $26,492.54.

22.     On October 23, 2001 Hubbard County by and through the Soil and Water Conservation District, hereafter SWCD contracted with WSN  project engineers to "Identify the alternative or combination of alternatives that would minimize the environmental, economic, and social impacts" of the flood waters on Lake Belle Taine.

23.     At the direction of the  Hubbard County Commission, Bill Alden of the Soil and Water Conservation District on or about January 15, 2002 advised WSN that it was prohibited from making a recommendation concerning the best alternative but was only required, despite the contract, to provide detailed information on all alternatives to be utilized by the Soil and Water Conservation District Technical Committee to formulate a specific recommendation to the Hubbard County Commission. At all times SWCD was in contact with the Minnesota Board of Soil and Water Resources.

24.     On March 12, 2002 the Hubbard County Soil and Water Conservation District established a committee known as the Technical Advisory Committee (TAC) to review the preliminary general plan. During the period of approximately January of 2002 to April 2002  the Soil and Water Conservation District TAC conducted closed meetings to develop a recommended course of action.

25.     Despite requests to participate in the TAC, the meetings were closed to the Plaintiffs and public. The times and dates of the meetings were not announced. Upon documented information and belief no minutes were kept of the proceedings. On May 15, 2002 the Hubbard County Soil and Water Conservation District presented the recommendation report to the Hubbard County Board of Commissioners recommending an infiltration solution to the flooding problem on Lake Belle Taine.

26.     On July 16, 2002 the Plaintiffs submitted an amended project petition and bond to the Hubbard County Auditor together with appropriate sureties in the sum of $10,000.00.

27.     On August 26, 2002 the Hubbard County Commission conducted a public hearing on the Works of Improvement petition pursuant to Minnesota statute 103C.605.

28.     Hubbard County Commission accepted public testimony and comment and continued the hearing pending the receipt of a detailed cost estimate for the infiltration option at the West end of Lake Belle Taine.

29.     On September 27, 2002 WSN completed its draft and conceptual plan and cost estimate for the West end infiltration option which was estimated to be 2.2 million dollars.

30.     The Water Task Force, on October 3, 2002, then requested the Soil and Water Conservation District to reconvene its Technical Advisory Committee to reconsider the direct discharge to the Sixth Crow Wing lake solution to the flooding problem, because of the high cost attached to the infiltration solution recommended by the Soil and Water Conservation District.

31.     On November 6, 2002 the Hubbard County Board of Commissioners again reiterated their opposition to the more cost effective direct discharge to the Sixth Crow Wing lake as a solution to the flooding problem on Lake Belle Taine and instructed the Soil and Water Conservation District not to reconvene their Technical Advisory Committee for a full review of

6

all the options.

32.     Hubbard County Commission on motion by Commissioner and Defendant Frank did allow the Water Task Force only to formulate specific written questions following the Technical Advisory Committee's review of the Engineer's Report. On December 4, 2002, the WTF did submit a list of detailed questions requesting information regarding the specific membership of the TAC and the specific processes, methods, evidence and proceedings which led to the recommendation made by the TAC.

33.     On January 3, 2003 the Plaintiffs Larson and Lundstrom did meet with Hubbard County Commissioners Nelson and Frank at a local restaurant, The West Forty, in Park Rapids to discuss the Works of Improvement.

34.     At the January 3, 2003 meeting, Commissioners Frank and Nelson requested the Plaintiffs withdraw the efforts and support for the direct discharge option to Crow Wing lakes, and requested the questions posed to the Soil and Water Conservation District be withdrawn.

35.     At the January 3, 2003 meeting Frank and Nelson advised Larson and Lundstrom that the County Board would not approve a direct discharge to the Crow Wing lakes despite any engineering evidence received to the contrary.

36.     At the January 3, 2003 meeting the Plaintiffs expressed concern to Commissioners Nelson and Frank of the high cost of the infiltration solution. Commissioners Frank and Nelson advised the Plaintiffs they had a plan to handle the high costs and that it was their intention to spread the cost throughout the entire Mantrap chain. Frank stated, "Why do you think we sent out 1800 notices?"

37.     Commissioner Frank stated and Nelson agreed the Hubbard County Board has experience in dealing with political issues associated with expensive projects, and that

7

Commissioner Frank stated, and Nelson agreed, they had sufficient support from Robinson and possibly one additional Commission member to "push through the infiltration option at the Hellkamp Creek site" based on the Soil and Water Conservation Districts Technical Advisory Committee recommendation.

38.     Both Frank and Nelson assured Larson and Lundstrom that the project would be "expedited" and approved if the Plaintiffs would drop their insistence on the direct discharge option to the Crow Wing lakes. Frank stated if the direct discharge option is abandoned, the commissioners would "carry the ball" and get the project done, provided all necessary bond funds were raised by the petitioners. The petitioners did raise all requested bond funds.

39.     At the January 3, 2003, meeting, commissioner Nelson was asked for assurance that his support for the project would not later change. Commissioner Nelson replied "we will follow the statutes; they tell us exactly what we need to do. We don't have any choice but to follow the statutes".

40.     After the January 3, 2003, meeting Plaintiff Larson confirmed with Commissioner Robinson his affirmative statement following the August 26, 2002 hearing, that Robinson would support an infiltration solution, but Robinson cautioned Larson, that for political considerations the direct discharge solution must be abandoned by the project proponents.

41.     On March 3, 2003 the Water Task Force and Plaintiffs, based on the assurances from Frank and Nelson, together with the open and public support of Commissioner Robinson, notified the Hubbard County Commissioners and the Soil and Water Conservation District that they would proceed with infiltration option for the Works of Improvement.

42.     On July 16, 2003 the Hubbard County Commission conducted the continued public hearing from August 26, 2002. The Hubbard County Commission voted 3 to 2 to proceed

8

with the project finding that all requirements of Minnesota statute 103C.605 had been complied

with. Commissioner Nelson, contrary to his prior commitment to the Plaintiffs, voted not to

proceed with the project. After a meeting with the Henrietta Township Board of Supervisors

following the July 16, 2003 vote, Larson and Lundstrom asked Nelson why he had voted against

the project and whether he would support the project. Nelson replied that he voted against the

project because "you hadn't done your homework about Henrietta Township" Nelson said he had

told someone (he could not remember whom) from the WTF at some time in late 2002 that they

needed to arrange for permits from Henrietta Township and that action had not been taken. Larson

and Lundstrom indicated they had never heard of it until the issue was raised Gary Johannsen of

the Hubbard County Environmental Services Department in late April or early May 2003, at

which time they arranged to be on the calendar for the next Henrietta Township Board meeting.

Lundstrom and Larson then asked Nelson if their action removed Nelson's concern and he would

support the project. Nelson replied that it did and he would again support the infiltration project.

43.     Immediately following the July 16, 2003 public hearing, in the Commission Room,

the Plaintiffs Larson and  Lundstrom met with Commissioners Frank and Robinson concerning

posting of the significant bond that would be required to have the final engineering plans and

reports prepared.

The bond was also to cover the report of viewers to be selected and employed by the Hubbard

County Commission.

44.     In the July 16, 2003 discussion Commissioner Frank assured the Plaintiffs Larson

and Lundstrom, with Commissioner Robinson nodding his head in agreement, that the final

decision would not be based on politics, but would be made on the engineering plans and

evidence presented at the hearing without emotion or public pressure.

45.     During the July 16, 2003 discussion, Commissioner Frank expressly and affirmatively stated, to Plaintiff Lundstrom and Larson, that, if the cost of the project as determined by the viewers was less than the benefits to be received, the commissioners were advised by legal counsel that Hubbard County would be required by statute to order the project established.

46.     Based on the affirmative representation of fact set forth in paragraph # 45 above, made by Commissioner Frank, agreed to by Commissioner Robinson and confirmed by Attorney Kurt Deter, upon direct inquiry from Plaintiff Lundstrom, the petitioners relied to their detriment on said statements and posted the necessary bonds to pay for final engineering plans, designs, and the viewers report.

47.     After the July 16, 2003, public hearing Lundstrom questioned the attorney for Hubbard County, how two (2) of the commissioners could vote not to proceed, when the petitioners had met all requirements of the law. Deter replied; the wording of the statute allowed them that latitude. Lundstrom then asked Attorney Deter how could the petitioners raise money if the commissioners could just do anything they wanted regardless of the findings. Attorney Deter stated the next step, by law, offers more protection to the petitioners than the step under the Statute we just voted on (103C.605). Deter advised Lundstrom as your financial obligation increases so does your protection;  if the benefits are more than the costs, the commissioners have to establish the project. Lundstrom then asked Deter, " what if they don't establish the project?" Deter looking at Lundstrom stated he would "suggest the petitioners sue the commissioners and the petitioners should win easily".

48.     Lundstrom then asked attorney Deter if Deter told the commissioners what Deter told Lundstrom about the process and the legal requirement to establish the project and Deter said

10

that he had.

49.     Prior to raising additional money within days after the July 16, 2003 public

hearing, Lundstrom called Robinson and Frank and asked them if Attorney Deter had indeed

advised the commissioners  that if the benefits of the project exceeded the costs the commission

would be required by law to establish the project. Both Robinson and Frank confirmed Attorney

Deter had told them the same thing.

50.     Lundstrom and Larson attended another meeting with commissioners Robinson

and Johansen on August 4, 2004, just shortly before the final hearing. During a discussion of how

the commissioners would deal with opposition to the cost of the project and the associated

assessments, Robinson indicated that perhaps the best thing to do would be for the commissioners

to vote against the project for some arbitrary reason, after which the WTF could appeal the

decision in court and get the project done without the commissioners being blamed. On being

asked if the commissioners would consider, as Commissioner Frank had proposed about a year

previously, purchasing the work done to date from the WTF and tabling project implementation

until the water got excessively high again, Robinson said he didn't think they would be willing to

do that, even thought it might not cost them any more than what they would lose when the county

could no longer receive a rebate of insurance premiums (something over $200,000.00 per year) for

Hubbard County's favorable claims history.

51.     On August 13 and 14, 2004 the Hubbard County Commission convened a public

hearing on the final engineering plans and viewers report as required by Minnesota Statute

103C.615. At the public hearing no expert testimony was presented that refuted the final

engineering report filed by WSN or criticizing the viewers report that was filed with the Hubbard

County Auditor.

52.     At the public hearing on August 13 and 14, 2004 numerous property owners did object to the viewers' mass appraisal report and argued the project did not provide any benefit to their property despite Hubbard County and the Soil and Water Conservation District, at the direction of Hubbard County, being the parties responsible for establishing the boundary of the Watershed Area to be included in the project.

53.     At the public hearing the benefit of the project was determined by the independent viewers, selected by Hubbard County. The benefit exceeded the cost of the project by more than 20 million dollars.

54.     On October 6, 2004 during the continuation of the public hearing, the Hubbard County Commission, citing only one (1) specific inaccuracy in the viewers report, voted not to accept the viewers report as complete and not to establish the Works of Improvement Project recommended by the Soil and Water Conservation District.

55.     The Commissioners' comments during the public hearing, some of which were reported in the press, made it clear that their decision was based on vocal opposition to the cost and assessments associated with the project rather than factual considerations, the adequacy of the viewers report or the need for the project.

56.     As of October 6, 2004 the Plaintiffs had acted as surety on bond payments made on behalf of the petitioners to Hubbard County in the sum of $172,657.67. The funds expended by the Plaintiffs for final engineering designs, viewer's reports, obtaining easements, conducting public hearings, legal expenses are in addition to matching grants received from the Minnesota Department of Natural Resources.

57.     Following the October 6, 2004 meeting in a telephone conversation, Commissioner

Frank commented to the Plaintiff Lundstrom, "The viewers report could have been amended in a few minutes.

## COUNT ONE

## NEGLIGENCE

58.     Larson and Lundstrom incorporate by reference each and every allegation contained in the  preceding paragraphs.

59.     The County of Hubbard and the individual Defendants were negligent and acted unreasonably in passing a resolution on July 16, 2003 for further action pursuant to Minnesota statute 103C.605 because on October 6, 2004, the Commission reversed these findings, which were relied upon by the plaintiffs pursuant to prior resolutions, upon adequate evidence.

60.     The Plaintiffs allege that the County of Hubbard and the individual Defendants were negligent in failing to insure the viewers who were under contract to the County provided a correct report as required by Minnesota law, and submitted a report that was acceptable to the Hubbard County Commission.

61.     The Plaintiffs allege the County of Hubbard and the individual Defendants were negligent in making full payment to the viewers pursuant to the contract for services that were found to be useless by the Hubbard County Commission for the purpose it was intended.

62.     The Plaintiffs contend the County of Hubbard and the individual Defendants were negligent in requiring the Soil and Water Conservation District Technical Advisory Committee to conduct closed meetings and exclude the petitioners from participation in the advisory process.

63.     The Plaintiffs contend the County of Hubbard and the individual Defendants were negligent in excluding participation or input from property owners on the upstream Mantrap chain of lakes in the preliminary stages of the proceeding causing a firestorm of opposition to the

13

project, when they were included in the assessment area at the time the resolution for further action was passed.

64.     The Plaintiffs contend the County of Hubbard and the individual Defendants were negligent in requiring the petitioners to post bonds to pay for easements from all landowners, preparation of final engineering plans, costs of administration,  contract with viewers, and holding public hearings prior to reversing their decision whether or not the project was practical, which was previously decided in the affirmative pursuant to the resolution for further action required by Minnesota Statute 103C.605.

65.     The Plaintiffs contend the County of Hubbard and the individual Defendants were negligent in failing to require amendments to the viewers report necessary to make a determination of whether the cost of the project was less than the benefits received as required by Minnesota Statute 103C.615, with the consequence of depriving the Plaintiffs of due process of law, and equal protection under the law, since there is no appeal under law from a project that is not established.

## COUNT TWO

## FAILURE TO PERFORM MINISTERIAL DUTY

66.     Larson and Lundstrom incorporate by reference each and every allegation contained in the  preceding paragraphs.

67.     That the Defendants failed to perform the ministerial duty of ensuring an adequate viewers report was produced in accordance with the written contract to allow a determination of benefits and cost required by Minnesota Statue 103C.615.

68.     The Defendants failed to order the viewers report  be amended by the viewers or corrected by the Defendants as the drainage authority of this project. Failure to perform this

14

ministerial duty resulted in a denial of due process of law to the Plaintiff's and allowed the Defendants to intentionally avoid making a determination of total benefits and costs required by Minnesota Statute 103C.615 subdivision 4.

69.     Minnesota Statute 103E.341 subdivision 2 does not set forth factors allowing the drainage authority to dismiss a project. Minnesota Statute 103E.341 subdivision 2 are factors mandating the establishment of a project.

70.     The findings by the Defendant's made pursuant to 103E.341 subdivision 2 against the establishment of the project were statutory requirements that were required to have been corrected by the Defendants, as the drainage authority, so that a proper determination could have been made concerning the benefits of the project in relation to the cost of the project.

71.     The Defendants were obligated to follow the sequential analysis of Minnesota Statute 103C.615 subdivision 1 to 7 in conducting the final hearing.

72.     That the Defendants conducting the hearing and voting against the establishment of the project using the factors set forth in 103E.341 subdivision 2 is directly contrary to the provisions of 103.615 subdivision 5. Minnesota Statute 103C.615 subdivision 5 expressly controls the establishment of a project for a Work of Improvement under 103C.601 et. seg.

73.     That the Defendants relied on general factors found in Minnesota Statute 103E.341 to establish a project used in a ditch proceeding that are in direct conflict with the specific establishment of project requirements for a Work of Improvement as set forth in Minnesota Statute 103C.615. The Defendants intentionally and maliciously failed to order the viewers report corrected to evade making legal findings required under Minnesota Statute 103C.615.

74.     That the Defendants were obligated to apply the specific statutory provisions of 103C.615 subdivisions 1 through 7 in making their determination of whether to establish the

project. The final hearing procedure was to be conducted in accordance with 103E.325 to

103E.341 provided the procedure is consistent with 103C.601 to 103C.635. The Defendants

intentionally failed to perform the ministerial duty of sequentially applying the Works of

Improvement statue 103C.601 et. seq. and the result was to deprive the Petitioners of due process

of law and their appeal rights.

## COUNT THREE

## VIOLATION OF 42 USC 1983

75.     The Plaintiffs Larson and Lundstrom incorporate by reference each and every

allegation contained in the preceding paragraphs.

76.     The Plaintiffs allege the intentional failure of the Defendants to accept an adequate

viewers report denied the Plaintiffs a fair and impartial decision on the project.

77.     The Defendants separately and acting in concert under the color of state law, knew

or should have known, the basis for making a decision to establish or dismiss a proposed project

requires that the drainage authority make specific findings on costs and benefits be determined.

78.     That the Defendants separately and acting in concert under the color of state law,

intentionally and willfully failed to make a determination of the benefits and costs and deprived

the Plaintiffs of their right to due process of law and their right to equal protection under the law,

all in violation of 42 USC 1983.

79.     The Defendants separately and acting in concert under the color of state law had

full and complete knowledge that by not establishing the project the Plaintiffs had no right to

appeal pursuant to Minnesota Statute 103C.635.

80.     The Defendants actions in failing  to require an amended viewers report was

malicious and a pretext reason for not establishing the project in a scheme employed by the

16

Defendants, separately and in concert, to avoid following the project establishment provisions found in Minnesota Statute 103C.615.

81.    As a direct and proximate result of the Defendants tortious conduct the Plaintiffs were deprived of their rights to a fair decision under the law, which constitutes a violation of their legal and civil rights.

82.    The Plaintiffs have incurred pain, suffering, emotional distress, humiliation, and pecuniary loss in an amount to be determined at trial.

## COUNT FOUR

## NEGLIGENT MISREPRESENTATION

83.    Larson and Lundstrom incorporate by reference each and every allegation contained in the proceeding paragraphs.

84.    The Plaintiffs contend that the Defendants were negligent in representing facts as true, when the Defendants had no basis in fact to know whether the affirmative statements as set forth in paragraphs 33-50, 73 and 74, made to induce action and conduct by the Plaintiffs, were in fact true or false.

## COUNT FIVE

## UNJUST ENRICHMENT

85.    The Plaintiffs Larson and Lundstrom incorporate by reference each of the allegations contained in the preceding paragraphs.

86.    The Plaintiffs allege the Defendants jointly and severally engaged in a course of conduct that induced the Plaintiffs and project petitioners to invest substantial sums of money for engineering studies on all options to solve the flooding issues on the Mantrap chain of Lakes,

issues that are in part caused by the County of Hubbard's own negligence in failing to maintain the flood way through County Road # 80.

87.     The Plaintiffs allege the County of Hubbard and the individual Defendants required the petitioners to commit funds to study issues far beyond the scope of the petitioners preference for a direct discharge to the Crow Wing lakes.

88.     The County of Hubbard was the primary beneficiary of the final engineering plans and designs which required the study of all other options and the retention of the benefit by the County of Hubbard without payment to the petitioners is unjust.

## COUNT SIX

### ESTOPPEL

89.     The Plaintiffs Larson and Lundstrom incorporate by reference each of the allegations contained in the preceding paragraphs.

90.     The Plaintiffs Larson and Lundstrom allege that the County of Hubbard and the individual Defendants made an affirmative promise to the project proponents that the statutory requirements of 103C.601 <u>et. Seq</u>.   would be strictly followed and adhered to.


91.     The Defendant Frank, with the agreement of Robinson stated to Larson and Lundstrom following the passage of the resolution for further action :

> If the cost of the project as determined by the viewers is less than the benefits the project would provide, then the project would be approved despite public opposition.

92.     The Defendants intended the Plaintiffs rely on the statements and  promises to induce their signature as sureties on bonds and to abandon the direct discharge option to the Crow Wing Chain of lakes, to which some of Frank's constituents objected.

93.     That Plaintiffs did in fact rely on the affirmative representation of fact and did raise

18

funds and execute guarantees in the sum of $172,657.67 for the purpose of funding final engineering plans, design, viewers reports, cost of administration, and public hearings.

94.    That the Plaintiffs' project expenses of $59,531.90 incurred prior to July 16, 2003 were rendered worthless by Defendants' negligence and improper actions.

95.    That the breach of the promise by Defendants to afford due process of law to the plaintiffs by the County of Hubbard and by Robinson and Frank has caused damage to the Plaintiffs in the sum of $232,189.57 and an award of damages for the funds expended is required to prevent injustice.

## PRAYER FOR RELIEF

**WHEREFORE** Larson and Lundstrom and all other Plaintiffs pray for the following relief:

96.    That Larson and Lundstrom and all other Plaintiffs be awarded compensatory damages from the Defendants jointly and severally in the amount to be established at trial.

97.    That the Plaintiffs Larson and Lundstrom and all other Plaintiffs be awarded their attorney's fees and costs and expenses in this action.

98.    That Plaintiffs Larson and Lundstrom and all other Plaintiffs each be awarded such other relief as this Court may deem just and equitable.

DATED: _Febru_____, _17_____ 2006

Associate Counsel
Timothy P. Hill (#188451)
Hill Law Office
P.O. Box 9043
Fargo, ND 58108-6017
(701)293-7612

Jay D. Carlson (#14990)
    15 Broadway, Suite 500
Alerus Financial Building
PO Box 448
Fargo, ND 58107
(701) 232-3953
**ATTORNEY FOR PLAINTIFFS**

## TRIAL BY JURY

**TRIAL BY JURY ON ALL ISSUES TRIABLE TO A JURY IS HEREBY DEMANDED BY**

**THE PLAINTIFF**

Jay D. Carlson
15 Broadway, Suite 500
Alerus Financial Building
PO Box 448
Fargo, ND 58107
(701) 232-3953
**ATTORNEY FOR PLAINTIFFS**

## ACKNOWLEDGMENT

     The undersigned hereby acknowledges that costs, disbursements and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. §549.211, subd. 3, for the party against whom the allegations in this pleading are asserted.

Jay D. Carlson
15 Broadway, Suite 500
Alerus Financial Building
PO Box 448
Fargo, ND 58107
(701) 232-3953
**ATTORNEY FOR PLAINTIFFS**